UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMANDA BALTASAR,

Plaintiff,

v.

NATIONWIDE CREDIT, INC.,

Defendant.

No. 22 CV 1565

Judge Manish S. Shah

## ORDER

Plaintiff's motion to remand, [11], is granted. The Clerk shall remand this case to the Circuit Court of Cook County. Terminate civil case.

## STATEMENT

Plaintiff Amanda Baltasar owed money on her credit card. Attempting to collect on the debt, defendant Nationwide Credit, Inc., sent Baltasar an email. Baltasar claims that by failing to make it clear how she could opt out of future communications, Nationwide violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692c(a)(1), 1692f. Nationwide removed Baltasar's lawsuit to this court. Baltasar moves to remand pursuant to 28 U.S.C. § 1447(c).

A defendant can remove a case to federal court when that case could have been filed originally in federal court. 28 U.S.C. § 1441(a). By invoking federal jurisdiction, the defendant must prove that all elements of jurisdiction—including Article III standing—existed at the time of removal. *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)). If at any time it appears that the court lacks subject-matter jurisdiction, it must remand the case to state court. 28 U.S.C. § 1447(c).

Baltasar argues that she didn't have Article III standing when she filed her lawsuit and that she couldn't have originally brought suit in federal court. *See* [11] at 2–3.[1] A challenge to standing can take the form of a facial or a factual attack. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint. [3-1].

Baltasar's challenge is a facial one, *see* [11] at 2–3, which means the question is "whether the allegations, taken as true, support an inference that the elements of standing exist." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (citing *Apex Digital*, 572 F.3d at 443–44).

Baltasar used an American Express account to pay for personal, family, and household purchases. [3-1] ¶¶ 17–18. When she defaulted on the account, American Express retained Nationwide as a debt collector. *Id.* ¶¶ 20–21. Nationwide sent Baltasar a collections email which included the amount she owed, the identity of the original creditor, and an account number. *Id.* ¶¶ 22–23. At the end of the email, Nationwide provided limited instructions on how Baltasar could opt out of future communications: she would either need to call Nationwide or click on an external link. *Id.* ¶¶ 26–30.

Seeking to represent a class of similarly situated debtors, Baltasar filed this lawsuit in state court. [3-1]. She alleges that by failing to include a clear and conspicuous statement describing a reasonable and simple method that she could use to opt out of future electronic communications, Nationwide violated §§ 1692c(a)(1) and 1692f of the FDCPA. *Id.* ¶¶ 34–37, 52–53.

Federal courts can decide only "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. Standing to sue is a threshold requirement "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To show that Baltasar had standing to sue, Nationwide must show "(1) that [Baltasar] suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)). Baltasar must have clearly alleged facts demonstrating each of these elements. *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

The issue here is whether Baltasar's injury is concrete. *See* [11] at 2–3; [13] at 3–7. Traditional, tangible harms like physical or monetary injuries are concrete, but some intangible harms can also support standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). Concrete intangible harms are those that have a "close historical or common-law analogue." *Id.* While Congress has the power to legally recognize concrete, *de facto* injuries that were previously inadequate in law, *Spokeo*, 578 U.S. at 341 (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 578 (1992)), not all statutory violations cause concrete harms. *See Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (citing *Thole*, 140 S. Ct. at 1621). In a suit for damages, like this one, the risk of future harm (by itself) is not a concrete injury. *See TransUnion*, 141 S. Ct. at 2210–12.

2

Injuries to a person's privacy—including disclosure of private information and intrusion upon seclusion—can be concrete harms. *TransUnion*, 141 S. Ct. at 2204 (citations omitted); *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912–13 (7th Cir. 2017) (discussing a harm analogous to disclosure of private information); *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 461–63 (7th Cir. 2020) (discussing a harm analogous to intrusion upon seclusion).

Congress had privacy injuries in mind when it enacted the FDCPA. *See* 15 U.S.C. § 1692(a) (finding that abusive debt collection practices contribute to "invasions of individual privacy"). Section 1692c(a)(1) prohibits debt collectors from communicating with consumers about a debt "at any unusual time or place or at a time or place known or which should be known to be inconvenient." 15 U.S.C. § 1692c(a)(1). Section 1692f forbids the use of unfair or unconscionable means to collect or attempt to collect a debt. 15 U.S.C. § 1692f.[2] But not all violations of the FDCPA create privacy injuries. For example, collecting an amount that is not expressly authorized by law or agreement (§ 1692f(1)) injures a debtor's property, not their privacy. So although Congress enacted the FDCPA in part to protect debtors' privacy, alleged violations of the law do not necessarily establish standing. *See Larkin*, 982 F.3d at 1065–66.

To allege a concrete privacy injury on the basis of disclosure, the complaint needed to say that Nationwide (1) disseminated (2) Baltasar's private information. *See TransUnion*, 141 S. Ct. at 2210 n.6 (actual disclosure to another person was required to show standing on the basis of a statutory injury analogous to defamation); *Gubala*, 846 F.3d at 910, 912–13 (a violation of a right of privacy is actionable where a plaintiff alleges the dissemination of his "personal information"); Restatement (Second) of Torts § 652D (Am. L. Inst. 1977) (the tort of "Publicity Given to Private Life" applies when a defendant gives "publicity" to "a matter concerning the private life of another").

Assuming that the information Nationwide sent to Baltasar was private, the complaint only says that Nationwide disseminated that information to Baltasar. *See* [3-1] ¶¶ 22–28. Plaintiff hasn't alleged that defendant shared her information with anyone else, which means that standing can't be based on a disclosure theory of harm to plaintiff's privacy interests. *See TransUnion*, 141 S. Ct. at 2210 n.6; *Gubala*, 846 F.3d at 910, 912–13.[3]

---

[2] The Bureau of Consumer Financial Protection has interpreted § 1692f to mean that debt collectors who communicate with debtors by email must "include in such communication or attempt to communicate a clear and conspicuous statement describing a reasonable and simple method by which the consumer can opt out of further electronic communications." 12 C.F.R. § 1006.6(e).

[3] The absence of any allegation of disclosure to a third party distinguishes this case from those that defendant relies on. *Cf. Thomas v. Unifin, Inc.*, Case No. 21-cv-3037, 2021 WL 3709184, at *1–2 (N.D. Ill. Aug. 20, 2021); *Keller v. Northstar Location Services*, Case No. 21-

Nationwide's second theory for a privacy injury in this case—intrusion upon seclusion—also doesn't hold up. *See* [13] at 3–7. Sending prohibited, unwanted communications to someone can cause a concrete privacy injury, even when those unwanted communications are the kind of minor annoyance that wouldn't be actionable at common law. *See Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 461–63 (7th Cir. 2020) (discussing this type of harm in a case involving alleged violations of the Telephone Consumer Protection Act); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190–93 (10th Cir. 2021) (finding that a debt collector who allegedly contacted a debtor in violation of §§ 1692g and 1692c of the FDCPA caused a concrete privacy injury); *see also Persinger v. Southwest Credit Sys., L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021); Restatement (Second) of Torts § 652B (Am. L. Inst. 1977). But when the only alleged harm is that a debt collector said more or less than the law requires in an otherwise permitted communication, that's a bare procedural violation, not an invasion of privacy. *See Casillas v. Madison Ave. Associates, Inc.*, 926 F.3d 329, 334–39 (7th Cir. 2019) (a debt collector's alleged failure to give a debtor the written notice required by 15 U.S.C. § 1692(g)(a) didn't cause any Article III injury); *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899–900 (7th Cir. 2020) (overstating the amount of a debt in a collection letter wasn't an Article III injury).[4]

Baltasar alleged that by sending her an incomplete email—omitting clear instructions as to how she could opt out of future communications—defendant used an unfair and unconscionable means to collect her debt and communicated at an inconvenient time or place. [3-1] ¶¶ 35, 37, 52–53. Plaintiff didn't allege that Nationwide wasn't allowed to email her altogether, or that she suffered any privacy injury as a result of the email. *Id.* ¶¶ 22–28. Put differently, the alleged harm in this case isn't about the "time" or "place" that Nationwide communicated with Baltasar: the crux of the complaint is that defendant didn't give Baltasar all of the information the FDCPA required. *See id.* ¶¶ 27–29, 34–37, 52–53.

Baltasar hasn't alleged a concrete injury on the basis of intrusion because the harm she points to is that Nationwide sent her an *incomplete* message, not a privacy injury related to the receipt of the message itself. *See Casillas*, 926 F.3d at 338–39 (the "bare harm of receiving inaccurate or incomplete information" is not enough to show standing). *Cf. Gadelhak*, 950 F.3d at 461–63 (the receipt of unwanted texts

---

cv-3389, 2021 WL 3709183, at *1–2 (N.D. Ill. Aug. 20, 2021); *Liu v. Radius Global Solutions, LLC*, No. 1:21-cv-02895, 2021 WL 4167585, at *1–2 (N.D. Ill. Sept. 14, 2021); *Liu v. Pioneer Credit Recovery, Inc.*, Case No. 21 C 2875, Dkt. 23 at 5–7 (N.D. Ill. Dec. 3, 2021).

[4] *See also Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 93–94 (2d Cir. 2019) (discussing *Strubel v. Comenity Bank*, 842 F.3d 181, 188–95 (2d Cir. 2016)), which distinguished between a mere risk of harm accompanying a statutory violation, such as the omission of required disclosures in a communication, and "the receipt of unwanted advertisements," a concrete harm capable of supporting standing to sue in federal court.

prohibited by statute, in a case involving allegations of a related privacy injury, was a harm capable of supporting standing to sue). That Baltasar alleged a violation of § 1692c(a)(1)—which implies that she received an unwanted communication—isn't itself enough. *See Nettles v. Midland Funding LLC*, 983 F.3d 896, 900 (7th Cir. 2020); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021). When analyzing standing, "allegations matter," *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1248 (7th Cir. 2021), and in this case the complaint doesn't say anything about an invasion of privacy. *See* [3-1]. *Cf.* Amended Class Action Complaint at 1, ¶ 3, *Gadelhak v. AT&T Services, Inc.*, 17-cv-1559, Dkt. 20 (N.D. Ill. April 12, 2017) (the plaintiff in *Gadelhak* alleged that the receipt of unauthorized text messages caused an "invasion of privacy"). Baltasar didn't allege a privacy injury, but rather a procedural failure that could have caused future harm (by exposing her to additional, unwanted emails when she would have otherwise opted out). *See* [3-1] ¶¶ 26–30. That risk of future harm on its own does not create a case or controversy for damages. *See TransUnion*, 141 S. Ct. at 2210–12.[5]

The complaint does not show that Nationwide's alleged statutory violation harmed Baltasar's privacy interests in a concrete way, and so she lacked standing to bring her FDCPA claim. *See Nettles v. Midland Funding LLC*, 983 F.3d 896, 900 (7th Cir. 2020).[6]

Plaintiff's motion to remand, [11], is granted.

ENTER:

Date: August 5, 2022

_____
Manish S. Shah
U.S. District Judge

---

[5] *Pennell* doesn't disagree. *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1043–45 (7th Cir. 2021) (holding, in a case involving an alleged violation of § 1692c, that a dunning letter that caused stress and confusion, absent some additional injury, wasn't sufficient to show standing). *Moldasheva* is distinguishable because that case involved alleged privacy harms based on the receipt of unwanted, prohibited communications, not incomplete (but otherwise permitted) messages. *See Moldasheva v. Hunter Warfield, Inc.*, Case No. 2:20-cv-06062-SVW-JC, 2021 WL 2953171, at *3–4 (C.D. Cal. Mar. 29, 2021).

[6] This case turns on the fine line between the minor annoyance of a prohibited, unwanted communication (which can cause an Article III injury), and the bare violation of an incomplete communication (which can't). That fine line and the Seventh Circuit's recent rulings in the area gave Nationwide an objectively reasonable basis for seeking removal and Baltasar isn't entitled to an award of attorney fees and costs incurred as a result of the removal. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *Lott v. Pfizer, Inc.*, 492 F.3d 789, 792–93 (7th Cir. 2007); 28 U.S.C. § 1447(c).